UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES | : | 3:10 CR 68 (JCH) |
|---|---|---|
| v. | : | |
| WILLIAM BOLTON | : | June 20, 2011 |

## DEFENDANT'S SENTENCING MEMORANDUM

**1. Introduction:**

William Bolton stands prepared for sentencing upon his guilty plea to one count of a Hobbs Act violation in violation of 18 U.S.C. §1951 and one count of transferring a firearm to a felon in violation of 18 U.S.C. §922(g)(1). He has been in custody since his arrest on March 22, 2009. When he is sentenced, Billy will have served 27 months in custody.

Because of Billy's unfortunately unique prior life and yet because of the things he has been able to accomplish in spite of that upbringing, his prior educational and employment history, his service to his country, and the fact that this is his first involvement with the criminal justice system, he asks for a sentence of time served and supervised release, along with whatever other special conditions the Court deems appropriate.

**2. An Analysis of the Current Sentencing Scheme in Federal Court:**

1

Until quite recently, criminal defendants were sentenced in the federal district courts in accordance with the dictates of the Sentencing Guidelines establishing by the United States Sentencing Commission. (the "Guidelines"). The Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), has, as the Second Circuit subsequently observed, "significantly altered the sentencing regime that has existed since the Guidelines became effective on November 1, 1987." United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).

In the first of two separate majority opinions, the Booker Court held that any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. Based on the foregoing, a second, different majority of the Justices held that the following two provisions must be severed and excised from the federal sentencing statute: 18 U.S.C. § 3553(b)(1) (mandating use of the Guidelines) and 18 U.S.C. § 3742(e) (setting forth standards of review on appeal). Booker, 543 U.S. 259-260.

As the Second Circuit observed in Crosby, one of its first decisions rendered in the wake of Booker, there are five primary implications of the decision with respect to the selection of sentences. First, as a result of Booker, the Guidelines are now advisory and not mandatory. Crosby, 397 F.3d at110. Second, a sentencing judge

must consider the Guidelines as well as all of the other factors identified in 18 U.S.C. § 3553(a) in arriving at a sentence to be imposed, even if the sentencing judge is no longer under a duty to apply the Guidelines. Crosby, 397 F.3d at 111.

The factors set forth in section 3553(a) include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Crosby court expressly declined to determine "what weight the sentencing judge should normally give to the applicable Guidelines range" in imposing a sentence. Crosby, 397 F.3d at 113, and further observed that, under certain circumstances, a sentencing court need not resolve which of two Guidelines ranges are applicable or whether a particular departure is authorized where the sentencing court, having complied with subsection 3553(a), decides to impose a non-Guidelines sentence. Id.

Next, the Crosby Court wrote:

> The sentencing judge should decide, after considering the Guidelines and all other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or ([II]) to impose a non-Guidelines sentence.

Id.[1]

Finally, the Second Circuit construed Booker to permit the sentencing judge "to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence." Id. As the Crosby court explained, a sentencing judge would violate 18 U.S.C. § 3553(a) by "limiting consideration of the applicable Guidelines

---

1. Although not required, the Second Circuit has deemed it "advisable to refer to a sentence that is neither within the applicable Guidelines range nor imposed pursuant to the departure authority in the Commission's policy statements as a 'non-Guidelines sentence' in order to distinguish it from the term 'departure.'" 2005 U.S. App. LEXIS 1699, [WL] at *5 n.9.

4

range to the facts found by the jury or admitted by the defendant, instead of considering the applicable Guidelines range, as required by subsection 3553(a)(4), based on the facts found by the court." Crosby, 397 F.3d 115.

3.  **Bolton Should Receive a Non-guidelines Sentence or Otherwise Not Be Sentenced According to a Strict Application of the Guidelines**

No one can question but that Bolton's formative years were chaotic, destructive, abusive and terrible. See, PSR ¶¶48-56. His parents divorced and his father effectively abandoned him, even to this date. PSR ¶56. His mother found companionship in men who ███████████████████████████████ He and his mother escaped one ████, PSR ¶¶49-50, lived in a shelter, and she then found companionship in another ████ who took advantage of Bolton for his own financial benefit. PSR ¶¶53-54. In the middle of these relationships, Bolton's mother became a drug abuser. PSR ¶52.

Although he did not do spectacularly well in school, Bolton did receive his high school diploma from Platt Technical School in Milford, and he further received a certification in HVAC. PSR ¶67. After working in different positions for several years, PSR ¶¶69-73, Bolton did what ultimately was the best thing for him: he enlisted in the U.S. Navy and served active duty aboard ship for 4 years. PSR ¶78. He was honorably discharged in 2006. Id. In hindsight, it is unfortunate that Bolton accepted his discharge. It appears that, given his personality and make up, the service was the

5

best place for him. He himself recognized this fact, unfortunately too late, for he had already committed the offenses of conviction when he re-enlisted in the service. PSR ¶79.

Both the government and the U.S. Probation Office advocate that Bolton should be treated severely not necessarily because of the offenses of conviction but because of the people with whom Bolton was associating when the offenses took place. The undersigned suggests that several factors militate against punishing Bolton more severely because he was associating with Alex DeFelice in 2007 and 2008. First, Dr. James Phillips conducted an extensive and detailed psychiatric evaluation of Bolton. See, Exhibit A. After noting the consistency between his and the 1996 observations of an earlier psychiatric by Dr. Donald Grayson, Dr. Phillips writes:





(Emphasis added).

According to two trained observers, while Bolton presents a personality type that demonstrates situational stress, he does not demonstrate any evidence of "antisocial trends." That is consistent with his own assessment of how and why he got involved with Alex DeFelice: he was "sucked in" PSR ¶21, and figured out too late for himself that the conscious decisions he had made got him in "over his head." PSR ¶20. In this regard, Dr. Phillips writes:



[REDACTED]

His wife's grandmother, Peggy Langhammer, sounds the same theme. ¶58-60. She described Billy as "warm and compassionate" who, once he started associating with DeFelice, became "brainwashed" and a "completely different person from the man [her granddaughter] married." PSR ¶58. After his arrest and separation from DeFelice, however, Mrs. Langhammer says, "Billy is coming back," has expressed remorse for his actions and "appears serious about wanting to change and make a decent life for himself." PSR ¶60.

For these reasons, Bolton suggests that a strict application of the Guidelines is not appropriate in this case. He does not appear to demonstrate the type of criminal personality that warrants a Guidelines application.

4. **Sentencing Suggestion:**

By the time Bolton stands before the Court for sentencing, he will have served 27 months of incarceration. That equates to an effective sentence of 31 months (27 x 1.15). That is close to the bottom of his Guidelines range. Given his past and the experts' evaluation, it is clear that Bolton needs psychological/psychiatric counseling. If the Court accepts the government's recommendation and sentences Bolton to additional incarceration, it is doubtful and that he will receive the type of counseling he

needs while he is incarcerated. He will only receive the treatment he needs to shore up his personality and return to a law abiding life once he is released from custody. This conundrum begs the question: Does Bolton or society need further incarceration?

Not surprisingly, Bolton argues that he does not need any further incarceration. There was nothing in his behavior before he met up with DeFelice that demonstrated he had any criminal propensity whatsoever. Two mental health professionals independently evaluated him and notwithstanding his upbringing found no evidence of any criminal or antisocial traits. He has zero criminal history points and thrived in the structured environment of the military. He recognized, too late for him, that he was in too deep with DeFelice and went back to the structured, organized life of the military. His wife's grandmother saw him fall into DeFelice's sway and sees him returning to himself now that the two are disassociated. With proper support, therapy and guidance through the structure of the Probation Office, Bolton will remain the law abiding member of society he was before and after 2008/2009.

RESPECTFULLY SUBMITTED,
WILLIAM BOLTON


BY:   -Alexander H. Schwartz-
      Alexander H. Schwartz, Esq. ct 05773
      3695 Post Road
      P.O. Box 701
      Southport, CT   06890-0701
      203.255.9829
      203.255.9839 (fax)
      alex@ahschwartz.com


**CERTIFICATION**

I hereby certify that on June 20, 2011 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


      -Alexander H. Schwartz-
      Alexander H. Schwartz

# EXHIBIT A

James Phillips, M.D.
General Psychiatry
Forensic Psychiatry
88 Noble Avenue
Milford, CT 06460
****
Telephone (203) 877-0566
Fax (203) 877-2652
Email: james.philllips@yale.edu
Tax ID: 06-1024665

June 9, 2011

Law Offices of Alexander Schwartz
Attorneys at Law
3695 Post Road, Suite 203
Post Office Box 701
Southport, CT 06890-9829

Dear Attorney Schwartz:

      The following is the report of my psychiatric evaluation of Mr. William Bolton, whom I evaluated at your request at the Wyatt Detention Center on February 11, 2011. The interview lasted approximately three hours. Prior to speaking with Mr. Bolton I explained to him that I was engaged by you to conduct a psychiatric evaluation and that we did not have a treatment relationship.

      In addition to the information obtained from the defendant, I reviewed the following information:
   1. Indictment from United States District Court, District of Connecticut, Grand Jury –09-03 (undated)
   2. Memorandum from Brendon M. Pierpaoli, U.S. Probation Officer, to Holly B. Fitzsimmons, U.S. Magistrate Judge, April 16, 2010
   3. Memorandum for Record, by Clayton M. Buchner, Trial Counsel, Department of the Army, Office of the Staff Judge Advocate, Fort Lee, Virginia, regarding SPC William Bolton, Pretrial Detention (undated)
   4. Letter to Alexander H. Schwartz, Esq. From Henry K. Kopel, Esq., United States Attorney, District of Connecticut, August 18, 2010, confirming plea agreement in case of United States vs William R. Bolton, Criminal No. 3:10cr68(JCH)
   5. Notes from Attorney Schwartz outlining some of defendant's history
   6. Psychiatric evaluation report of William Bolton by Donald Grayson, M.D., 6/24/96
   7. Psychological testing report on William Bolton by Rafael Gallegos, 4/18/11
   8. Compact discs containing exerpts of surveillance videos taken on 1/31/11 and 3/9/11.

Associate Clinical Professor of Psychiatry,      Diplomate, American Board of Psychiatry and Neurology,
Yale School of Medicine      Distinguished Fellow, American Psychiatric Association

William Bolton
June 9, 2011
Page two

**Identifying Information:**

Name: William Bolton
D.O.B. 7/5/78
Dates of Interview: 2/11/11
Date of Report: 6/9/11


**Referral Information:**

   Mr. Bolton is a   is a 32 year-old, married male, who has pled guilty in federal court to charges of conspiracy to commit robbery (Hobbs Act conspiracy - 18 U.S.C. 1951) and sale of a firearm to a convicted felon (18U.S.C. 922(d)(1)).
   These charges are related to an incident planned and recorded on 1/31/09 to assist other defendants in robbery of the house of a man known to the defendants to be a manufacturer of guns, and to another incident recorded on 3/9/09 in which the defendant participated in the sale of a weapon to a known felon.

**Recent History and Circumstances of the Offense:**



William Bolton
June 9, 2011
Page three



**Past History:**

William Bolton
June 9, 2011
Page four

**Medical and Psychiatric History:**

William Bolton
June 9, 2011
Page five

**Mental Status Examination:**

**Impression:**

William Bolton
June 9, 2011
Page six



Very truly yours,

James Phillips, M.D.